UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH LICHTER, individually and on behalf of all others similarly situated,

                Plaintiff,

–against–

BUREAU OF ACCOUNTS CONTROL, INC.,

                Defendant.

**OPINION AND ORDER**

19 Civ. 04476 (ER)

RAMOS, D.J.:

      Joseph Lichter brings this putative class action against Bureau of Accounts Control, Inc. ("BAC"), a debt collection agency, alleging a violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"). Before the Court is Lichter's motion for summary judgment and BAC's cross-motion for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons set forth below, the Court GRANTS Lichter's motion for summary judgment and DENIES BAC's cross-motion for summary judgment.

### I. BACKGROUND

#### A. Factual Background[1]

      In his Complaint, Lichter initially alleged that on August 3, 2016, he obtained personal medical services from a provider named New Jersey Urology, LLC ("New Jersey Urology"). Doc. 1, Complaint ("Compl.") at ¶ 29. However, BAC alleged that it was actually Bergen Urological Assoc., PA ("Bergen Urological") that provided services to Lichter on August 3, 2016. *Id.* at ¶¶ 25–26; Doc. 20-1, Defendant's Response to Plaintiff's Statement of Undisputed

---

[1] These facts are undisputed, unless otherwise noted.

Facts ("Def.'s Res. 56.1") at 2, ¶¶ 1–2.  It is undisputed that on that date, Lichter signed two documents on Bergen Urological letterhead that explained Bergen Urological's financial policy and outlined the procedure for dealing with Lichter's insurance company.  Doc. 20-10, Ex. H ("Bergen Docs.").  BAC alleges that Lichter thereafter defaulted on a balance owed to Bergen Urological stemming from these services in the amount of $1,025.00.  Compl. at ¶¶ 25, 31; Doc. 19, Plaintiff's Rule 56.1 Statement ("Pl.'s 56.1") at ¶¶ 6–8, 10–11.  After Lichter allegedly defaulted on this debt, Bergen Urological assigned the alleged debt to BAC for collection.  Compl. at ¶¶ 30–31; Pl.'s 56.1 at ¶¶ 10–11; Def.'s Res. 56.1 at 2, ¶ 1.  Lichter denies ever having owed any debt to Bergen Urological.  Compl. at ¶¶ 36–40; Pl.'s 56.1 at ¶¶ 15–19.

On December 28, 2018, BAC mailed Lichter a letter, identifying itself as a debt collector and Bergen Urological as Lichter's creditor.[2]  Def.'s Res. 56.1 at 2, ¶ 2; Doc. 20-7, Ex. E.  BAC's letter explained that Bergen Urological requested that BAC collect a past due amount of $1,025.00 for services provided to Lichter on August 3, 2016.  Def.'s Res. 56.1 at 2, ¶ 2; Doc. 20-7, Ex. E.  BAC claims Lichter never responded to its letter, though Lichter claims he disputed it.  Def.'s Res. 56.1 at 2, ¶ 3; Doc. 24-1, Plaintiff's Response to Defendant's Additional Statements and Material Facts ("Pl.'s Res. to Def.'s 56.1") at ¶ 3.

On February 2, 2019, BAC sent Lichter another letter, again identifying itself as a debt collector and Bergen Urological as Lichter's creditor.  Compl. at ¶ 32; Doc. 1-1; Pl.'s 56.1 at ¶¶ 12–14.  This letter again explained that BAC was attempting to collect on the balance due to Bergen Urological.  Compl. at ¶ 32; Doc. 1-1; Pl.'s 56.1 at ¶¶ 12–14.  Again, BAC claims that Lichter never responded to the letter.  Def.'s Res. 56.1 at 3, ¶ 5.

---

[2] Although BAC stated in its Rule 56.1 statement that this letter was dated December 28, 2017, the letter, which BAC attached as an exhibit, is dated December 28, 2018.  Def.'s Res. 56.1 at 2, ¶ 2; Doc. 20-7, Ex. E.

Throughout this time, BAC maintained records detailing its efforts to collect the alleged debt from Lichter.  Doc. 20-9, Ex. G.  Specifically, on February 12, 2019, BAC's records describe a phone call with Lichter's wife as follows: "CB/LM ON VM- I CALLED WIFE WENT ON AND ON ABOUT CL FILING WRNG DIAGNOSTIC CODES AND SHE GETS NO COOPERATION FROM CL- SHE IS STARTING LEGAL PROCEDURE- THEY HAD INS AND THEY HAD NO RIGHT TO PUT THEM IN COLLECTIONS- ADVISED TO DISPUTE IN WRITING."  *Id.* at 2.  The following week, on February 18, 2019, BAC's records transcribe a message from an individual named "Judy," in which Judy states "Please cancel this account as a corrected claim needed to be sent to the ins[urance] co[mpany] in a timely manner and our follow up team failed to do so therefore the balance will be written off as the patient should not have been liable for it."[3]  *Id.*  On February 18, 2019, the record reflects that BAC cancelled the account and charged a cancellation fee to Bergen Urological.  *Id.*

### B.  Procedural History

On May 16, 2019, Lichter filed the instant action, alleging that BAC violated the FDCPA.  Lichter's core allegation is that BAC's letter was false because, in fact, he owed no debt to Bergen Urological.  On May 4, 2020, following discovery, Lichter moved for summary judgment.  Doc. 16, Plaintiff's Motion for Summary Judgment ("Pl.'s Motion").  On June 4, 2020, BAC filed an opposition and cross-motion for summary judgment.  Doc. 20, Defendant's Cross-Motion for Summary Judgment ("Def.'s Cross-Motion").

---

[3] Judy's identity and relation to these events is not clear upon review of this record, and the parties have not clarified her identity.

3

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Id.* The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (citing *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture, or surmise. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its

favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986)).

"When confronted with cross-motions for summary judgment, the Court analyzes each motion separately, 'in each case construing the evidence in the light most favorable to the non-moving party.'" *Peterson v. Kolodin*, No. 13 Civ. 793 (JSR), 2013 WL 5226114, at *1 (S.D.N.Y. Sept. 10, 2013) (quoting *Novella v. Westchester Cnty.*, 661 F.3d 128, 139 (2d Cir. 2011)); *see also Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) ("[E]ach party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration.") (citation omitted).  The Court is not required to resolve the case on summary judgment merely because all parties move for summary judgment.  *Morales*, 249 F.3d at 121.

### B.  FDCPA

The FDCPA is "primarily a consumer protection statute."  *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 75 (2d Cir. 2016) (quoting *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 95 (2d Cir. 2008)).  It was enacted in 1977 "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  To establish a violation of the FDCPA, a plaintiff must satisfy three elements:  (i) the plaintiff must be a "consumer"; (ii) the defendant must be a "debt collector"; and (iii) the defendant must have committed some "act or omission in violation of FDCPA requirements."  *See Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 514 (S.D.N.Y. 2013) (quoting *Schuh v. Druckman & Sinel, L.L.P.*, 751 F. Supp. 2d 542, 548 (S.D.N.Y. 2010)).  Debt collectors are

subject to strict liability for violations of the FDCPA. *Ellis v. Solomon & Solomon, PC.*, 591 F.3d 130, 135 (2d Cir. 2010) (citing *Bentley v. Great Lakes Collection Bureau, Inc.*, 6 F.3d 60, 63 (2d Cir. 1993)).

To determine whether a communication violates the FDCPA, the Second Circuit applies the "least sophisticated consumer" standard. *See Ellis*, 591 F.3d at 135. In applying this standard, courts "ask how the least sophisticated consumer . . . would understand the collection notice" at issue. *Avila*, 817 F.3d at 75 (citation omitted). Under this test, a violation of the FDCPA is established if the conduct at issue "could mislead a putative-debtor as to the nature and legal status of the underlying debt, or . . . could impede a consumer's ability to respond to or dispute collection." *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F.App'x. 89, 94 (2d Cir. 2012).

## III.   DISCUSSION

In his Complaint, Lichter initially argued that he actually owed the disputed debt to New Jersey Urology, not to Bergen Urological. Compl. at ¶¶ 29, 36–40. Thus, he alleged, BAC's February 2, 2019 letter attempting to collect a debt for Bergen Urological violated the FDCPA.[4] *Id.* at ¶¶ 1, 44–56. In support of his motion for summary judgment, however, Lichter's argument morphed slightly. Instead of arguing that he actually owed a debt to New Jersey Urology, Lichter argued that *if* he owed any debt, he owed it to New Jersey Urology.[5] Doc. 18,

---

[4] Lichter has stated that he is only relying on BAC's February 2, 2019 letter to support his FDCPA claim. He has affirmatively disclaimed any entitlement to relief based on BAC's December 28, 2018 letter. *See* Compl. at ¶ 32; Doc. 23, Plaintiff's Memorandum of Law in Opposition to Defendant's Cross-Motion at 8.

[5] In its answer to Lichter's Complaint, BAC initially admitted the allegation that "[Lichter] incurred a debt for medical services with New Jersey Urology, LLC, not Bergen Urological Assoc., PA." Compl. at ¶ 29; Doc. 8, Answer ("Answer") at ¶ 29. Lichter relies heavily on this admission in his brief supporting his summary judgment motion. Doc. 18, Memorandum of Law in Support of Plaintiff's Motion at 8–10, 17. BAC later explained that this admission "was simply a result of a scrivener's error," and amended its answer to deny the allegation that Lichter incurred a debt for medical services with New Jersey Urology. Doc. 20-3, Ex. A ("Cipparulo Decl.") at ¶ 1; Doc. 36, Amended Answer to Complaint ("Amended Answer") at ¶ 29.

6

Memorandum of Law in Support of Plaintiff's Motion ("Pl.'s Memo in Support") at 8, 10. However, Lichter's argument evolved once more after BAC introduced its business records as an exhibit to its cross-motion.  *See* Doc. 20-9, Ex. G.  Lichter finally argues that the undisputed evidence shows that he did not owe a debt at all—not to New Jersey Urology, and not to Bergen Urological.  Doc. 23, Plaintiff's Memorandum of Law in Opposition to Defendant's Cross-Motion ("Pl.'s Opposition Memo") at 7, 12–13, 15.  As such, Lichter contends, the Court should find that BAC violated the FDCPA by falsely representing that he owed a debt to Bergen Urological.  *Id.* at 7, 9, 12–13, 15–16.

In opposition to Lichter's motion and in support of its cross-motion for summary judgment, BAC maintains that the undisputed facts show that Lichter *did* owe a debt to Bergen Urological.  Doc. 20-2, Brief in Support of Defendant's Cross-Motion ("Def.'s Brief in Support") at 4–5, 9–10.  BAC separately argues that it did not intend to misrepresent the existence of any debt.  Doc. 29, Defendant's Reply Brief in Support of its Cross-Motion ("Def.'s Reply Brief") at 10.  Therefore, according to BAC, its February 2, 2019 letter to Lichter did not violate the FDCPA.  *Id.*

### A.  The First Two Elements of Lichter's FDCPA Claim

The parties do not dispute that Lichter has satisfied the first two elements of his FDCPA claim:  (i) that Lichter is a consumer who allegedly owes the debt; and (ii) that BAC is a debt collector under the FDCPA.  *See* Pl.'s 56.1 at ¶¶ 3–8, 21; *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 514 (S.D.N.Y. 2013) (quoting *Schuh v. Druckman & Sinel, L.L.P.*, 751 F. Supp. 2d 542, 548 (S.D.N.Y. 2010)); *see also Vu v. Diversified Collection Servs., Inc.*, 293 F.R.D. 343, 357 (E.D.N.Y. 2013).

### B.  The Third Element of Lichter's FDCPA Claim

Because it is undisputed that Lichter is a consumer and that BAC is a debt collector, the only open question is the final element of Lichter's FDCPA claim:  whether BAC has engaged in any act or omission in violation of FDCPA requirements.  *See Hunter v. Palisades Acquisition XVI, LLC*, No. 16 Civ. 8779 (ER), 2017 WL 5513636, at *5 (S.D.N.Y. Nov. 16, 2017) (quoting *Ogbon v. Beneficial Credit Servs., Inc.*, No. 10 Civ. 3760 (GBD), 2011 WL 347222, at *4 (S.D.N.Y. Feb. 1, 2011)).

According to Lichter, BAC's February 2, 2019 letter falsely represented the character, amount, or legal status of the alleged debt because it asserts that he owed money to Bergen Urological when he did not.  Pl.'s Memo in Support at 8, 10.  Under the objective least sophisticated consumer standard, a debt collector's communication violates the FDCPA if it "could mislead a putative-debtor as to the nature and legal status of the underlying debt." *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F.App'x. 89, 94 (2d Cir. 2012).  The standard asks "'whether the hypothetical least sophisticated consumer could reasonably interpret' the representation in a way that is inaccurate." *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 135 (2d Cir. 2017) (quoting *Easterling v. Collecto, Inc.*, 692 F.3d 229, 234 (2d Cir. 2012)).  BAC's communication to Lichter is open to only one reasonable interpretation:  that Lichter owed a debt to Bergen Urological.  *See* Doc. 1-1.  Thus, if Lichter did not, in fact, owe a debt to Bergen Urological, BAC's communication would constitute a misleading representation in violation of the FDCPA.  *See Vangorden v. Second Round, Ltd. P'ship*, 897 F.3d 433, 442 (2d Cir. 2018) (finding an FDCPA violation where the only reasonable interpretation of the debt collector's communication was misleading, because it informed the debtor of an outstanding debt that had already been settled); *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 395 (4th

Cir. 2014) (finding a debt collector's communication "so plainly false and misleading" when it communicated that the debtor's account "has not been satisfied" although the debtor had already paid off the debt in full).

Alternatively, BAC alleges that the undisputed facts show that Lichter *did* owe a debt to Bergen Urological. Def.'s Brief in Support at 4–5, 9–10. If true, BAC's communication, which clearly identifies Bergen Urological as Lichter's creditor, would not violate the FDCPA. *Id.* Thus, the parties' motions turn on whether the undisputed facts show that Lichter did—or did not—owe a debt to Bergen Urological.

### 1. Documents on Bergen Urological Letterhead

To support its argument that Lichter owed a debt to Bergen Urological, BAC relies on two documents bearing Lichter's signature. Def.'s Res. 56.1 at 3, ¶¶ 7–11; Bergen Docs. Although the party opposing summary judgment does not necessarily need to produce evidence in a form that would be admissible at trial, the content of the evidence must be such that it would be admissible at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 675–76 (S.D.N.Y. 2012). At the summary judgment stage, the Court retains "'wide discretion in determining which evidence is admissible.'" *LaSalle Bank Nat'l Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 205–06 (2d Cir. 2005) (quoting *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998)).

Lichter challenges the admissibility of these documents as business records, arguing that they rely solely on the declaration of P. Susan Perrotty for authentication, and that Perrotty's declaration fails to state her affiliation with any party to this action or the basis for her purported knowledge regarding these records. Pl.'s Res. to Def.'s 56.1 at ¶¶ 7–8, 10; *see* Doc. 20-5, Ex. C ("First Perrotty Declaration"). However, any deficiencies in Perrotty's first declaration are cured

9

by her second declaration, in which she explained that she is the sole shareholder of BAC and that she implemented BAC's business practices. *See* Doc. 29-2, Ex. J ("Second Perrotty Declaration") at ¶ 2.  Moreover, even if these documents were not considered business records, they would still be admissible as the statements of a party opponent.  *See* Fed. R. Evid. 801(d)(2).  Since Lichter admits to having signed these documents, the Court may consider them as non-hearsay party admissions.  Pl.'s Res. to Def.'s 56.1 at ¶¶ 9, 11; Doc. 20-6, Ex. D at ¶¶ 1–2; *see Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 693–94 (S.D.N.Y. 2014); *Rodriguez v. Mod. Handling Equip. of NJ, Inc.*, 604 F. Supp. 2d 612, 622 (S.D.N.Y. 2009).

Both of these documents were signed on August 3, 2016, the date on which BAC alleges that Lichter received medical services from Bergen Urological.  Bergen Docs.  The first document, titled in all-caps and underlined, "Financial Policy," states that Bergen Urological is committed to providing the best possible care and outlines its procedure for handling payment.  *Id.* at 2.  Above Lichter's signature, the document reads in all-caps text, "I acknowledge the original copy of this information."  *Id.*

The other document, addressed to "Patient/Guardian," explains that reimbursement for any services provided will be sent directly to Lichter.  *Id.* at 3.  Above Lichter's signature, the document reads, "I acknowledge that if I receive the insurance payment for services rendered by Bergen Urological Associates I will sign over the check(s) to them with the Explanation of Benefits within five (5) business days of receipt of the check."  *Id.*

Although Lichter signed these documents on August 3, 2016, these documents do not conclusively show that Lichter actually received medical services from Bergen Urological on that date.  Even if they did, these documents fail to show the existence of any *debt* owed by Lichter to Bergen Urological—the material fact on which this litigation turns.

### 2. BAC's Business Records

In its Rule 56.1 statement and its cross-motion brief, BAC relies on two business records pertaining to its account for Bergen Urological. Def.'s Res. 56.1 at 3, ¶ 6; Def.'s Brief in Support at 6, 9–10. These records contain "contact notes" detailing the status of Lichter's alleged debt, and occasionally describing communications between BAC and others outside the organization. Doc. 20-9, Ex. G. Each entry is accompanied by the initials of the note's author. *Id.*

The first record, dated June 6, 2019, is titled "Debtor Information." Doc. 20-9, Ex. G at 2 ("Debtor Information"). It identifies Lichter as the debtor and establishes that the account was assigned on December 19, 2018, a few days before BAC mailed Lichter its first collection letter. *Id.* On February 12, 2019, a BAC employee with the initials "LG" noted that they received a call from Lichter's wife, in which she claimed that they had insurance and that Bergen Urological had filed the "wr[o]ng diagnostic codes," and so Bergen Urological "had no right to put them in collections." *Id.* On February 18, 2019, a BAC employee with the initials "PS" logged another note describing a message from an individual named "Judy." *Id.* This note transcribes a message in which Judy explained that Lichter's insurance company did not receive a corrected claim, which led Bergen Urological to believe that Lichter owed the debt. *Id.* Consequently, Judy requested that BAC "cancel this account," because "the patient should not have been liable for it." *Id.* Directly following this message, the BAC employee added an internal note that BAC had cancelled the account. *Id.* A note entered later that day by another BAC employee remarked that BAC charged Bergen Urological for the cancellation fee. *Id.*

The subsequent business record, dated June 13, 2019, is titled "Account Information." Doc. 20-9, Ex. G at 3 ("Account Information"). It identifies Bergen Urological as BAC's client

as of December 19, 2018, and it identifies Lichter as Bergen Urological's medical patient and debtor for medical services rendered on August 3, 2016. *Id.* It further details the $1,025.00 balance allegedly owed by Lichter and adds that it last mailed Lichter a collection letter on February 2, 2019. *Id.* This document also indicates towards the top right-hand corner that the collection has been "disputed" and denotes the account status as "cancel[led]" on February 18, 2019. *Id.*

At various points, both parties have argued that these records, or parts of them, are inadmissible. BAC originally introduced these records, unredacted, as part of its cross-motion. *See* Doc. 20-9, Ex. G. In Lichter's Opposition and Reply brief, he relies on the account notes, though he has simultaneously argued in his response to Defendants 56.1 statement that the business records on the whole are inadmissible.[6] Pl.'s Res. to Def.'s 56.1 at ¶¶ 5–6. He argues from the contact notes that BAC "determined as of February 18, 2019 that [he] did not, in fact, owe the alleged debt," based on the message from Judy. *Id.* at ¶ 14.

As discussed above, in her first declaration, Perrotty failed to explain her relation to any of the parties, nor did she explain how she knew this information about BAC's record-keeping practices. However, in her second declaration, Perrotty clarified that she is the "sole shareholder" of BAC and that she is familiar with and actually implemented BAC's business practices. Second Perrotty Declaration at ¶ 2. Perrotty's two declarations sufficiently lay the foundation for BAC's business records.[7] Thus, the Court may consider these business records pursuant to Fed. R. Evid. 803(6).

---

[6] Like his argument with respect to the documents on Bergen Urological letterhead, Lichter argues that BAC's business records are inadmissible because of the insufficiency of the first Perrotty declaration.

[7] "[C]ourts generally have exhibited a degree of flexibility in dealing with evidence used in summary judgment proceedings, particularly when the evidence has been submitted by a party opposing a motion for summary judgment." *Lamoureux v. AnazaoHealth Corp.*, No. 3:03 Civ. 01382 (WIG), 2010 WL 3801611, at *1 (D. Conn. Sept. 22, 2010); *see also Shepard v. Frontier Commc'ns Servs., Inc.*, 92 F. Supp. 2d 279, 284–85 (S.D.N.Y. 2000)

While BAC argues that the business records themselves are admissible, it further argues for the first time in its reply brief that the statements by Lichter's wife and by Judy contained within the records are inadmissible as hearsay. Def.'s Reply Brief at 8–9. It is true that "[i]nadmissible hearsay does not become admissible solely by virtue of its inclusion in an admissible report." *Rodriguez v. Mod. Handling Equip. of NJ, Inc.*, 604 F. Supp. 2d 612, 622 (S.D.N.Y. 2009) (citing *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991)). However, BAC did not raise this issue until its reply brief, to which Lichter could not respond. Def.'s Reply Brief at 8–9. The Court need not consider "[n]ew arguments first raised in reply papers in *support* of a motion." *Domino Media, Inc. v. Kranis*, 9 F. Supp. 2d 374, 387 (S.D.N.Y. 1998); *see also Playboy Enters., Inc. v. Dumas*, 960 F. Supp. 710, 720 n.7 (S.D.N.Y. 1997) ("Arguments made for the first time in a reply brief need not be considered by a court.") (collecting cases in which this District has refused to consider arguments first raised in reply briefs).

Moreover, the Second Circuit has held that, where a defendant "cited . . . letters and relied on them in seeking summary judgment," that defendant, by doing so, "waived any objections to the admissibility of the reports by offering them themselves." *Capobianco v. City of New York*, 422 F.3d 47, 55 (2d Cir. 2005); *see also Melvin v. Cnty. of Westchester*, No. 14 Civ. 2995 (KMK), 2019 WL 1227903, at *4 n.9 (S.D.N.Y. Mar. 15, 2019) (considering evidence on summary judgment after neither party objected to its admissibility); *Gjini v. United States*, No. 16 Civ. 3707 (KMK), 2019 WL 498350, at *4 n.7 (S.D.N.Y. Feb. 8, 2019) (waiving objections to admissibility of portions of plaintiff's deposition transcript because neither party

---

(allowing plaintiff to submit a supplemental affidavit to cure deficiency in initial affidavit); *N.Y. State Energy Rsch. & Dev. Auth. v. Nuclear Fuel Servs., Inc.*, 561 F. Supp. 954, 960 (W.D.N.Y. 1983) ("The deficiencies of the affidavit in regard to [the witness's] statement of his personal knowledge of facts set forth and as to the authenticity of the attached documents has been cured by his supplemental affidavit in opposition to the cross-motion.").

13

objected to the admissibility of the statements and because both parties repeatedly cited to the transcript in their briefs); 10A Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 2722 (4th ed. 2020) ("[D]ocuments inadmissible under the evidence rules may be considered by the court if not challenged. The objection must be timely or it will be deemed to have been waived.").

In *Capobianco*, the Second Circuit held that the district court "abused its discretion by refusing *sua sponte* to consider [a doctor's] reports" that the parties had relied on. *Capobianco*, 422 F.3d at 56. There, the defendants attached two doctor's reports as exhibits to its Rule 56.1 statement and sought to rely on them in support of their motion for summary judgment. *Id.* at 54–56. At that time, neither party objected to the admissibility of these reports; in fact, "both sides relied on them." *Id.* at 55. Similarly here, not only did BAC not object to the introduction of hearsay statements within these business records, it affirmatively relied on them to establish the propriety of the letters. It was not until Lichter relied on the statements that BAC raised this issue.

Since the Court will not consider arguments first made in a reply brief and since BAC waived any objections to the admissibility of certain statements in its business records, the Court will consider the entirety of the two business records cited by BAC. *See Kranis*, 9 F. Supp. at 387; *Capobianco*, 422 F.3d at 55.

### 3. Act or Omission in Violation of FDCPA Requirements

As discussed above, whether BAC has engaged in any act or omission in violation of FDCPA requirements turns on whether Lichter owed a debt to Bergen Urological. *See Vangorden v. Second Round, Ltd. P'ship*, 897 F.3d 433, 437–38, 443 (2d Cir. 2018) (finding that plaintiff plausibly pleaded her FDCPA claim by alleging that Defendant tried to collect on a debt

14

that did not exist); *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 395 (4th Cir. 2014). BAC's intent in sending the notice is not relevant in determining whether a violation occurred. *See Vangorden*, 897 F.3d at 437–38 (affirming denial of motion to dismiss even though plaintiff did not address defendant's intent, because the FDCPA is a strict liability statute).

Here, BAC's own records establish that Lichter did not owe a debt to Bergen Urological. *See supra*, Section III.B.2. The message from Judy found in these records requested that BAC "cancel this account as a corrected claim needed to be sent to [Lichter's insurance company]," and that, as a result of the failure to send a corrected claim to Lichter's insurance company, "the patient should not have been liable for [the debt]." Debtor Information. After receiving this message, BAC cancelled the account and charged Bergen Urological a cancellation fee. *See id.* A reasonable jury could only interpret these facts one way: that Bergen Urological mistakenly asked BAC to collect the alleged debt from Lichter. There is no genuine dispute that Lichter owed no debt to Bergen Urological.

In BAC's reply brief in support of its cross-motion, it makes an additional argument that, whether or not Lichter's debt actually existed, debt collectors must be able to rely on the information provided by their clients and that debt collectors are not required to conduct independent investigations into that information. Def.'s Reply Brief at 10. BAC relies entirely on *Stonehart v. Rosenthal*, No. 01 Civ. 651 (SAS), 2001 WL 910771, at *6 (S.D.N.Y. Aug. 13, 2001) to advance this argument. *Stonehart* held that, "[t]o state a claim under section 1692e(2) of the FDCPA, [the consumer] must show that [the debt collector] *knowingly* misrepresented the amount of the debt when he verified the complaint." *Id.* (citing *Ducrest v. Alco Collections, Inc.*, 931 F. Supp. 459, 462 (M.D. La. 1996)) (emphasis added). In further reliance upon only *Ducrest*, the court in *Stonehart* explained that "[a] debt collector must be able to rely on

representations from his client as to the amount of the debt" and that "[t]he FDCPA does not require debt collectors to conduct independent investigations of the information provided by clients when collecting a debt." *Id.*

The Second Circuit has not adopted the proposition that the FDCPA requires a plaintiff to prove that the debt collector knowingly made a misrepresentation, and it has reiterated that the FDCPA is a strict liability statute.[8] *See, e.g.*, *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33–34 (2d Cir. 1996). When applying the least sophisticated consumer standard, the relevant question is whether a putative debtor could be misled by the debt collector's communication. *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F.App'x. 89, 94 (2d Cir. 2012). Whether the debt collector *knowingly* made that representation is of no moment. *See id.* Further, other courts in this District have called *Stonehart* into doubt, most notably in *Lee v. Kucker & Bruh, LLP*, 958 F. Supp. 2d 524, 528–29 (S.D.N.Y. 2013). In *Lee*, the court explained that "[i]t is well established that the FDCPA imposes strict liability on debt collectors," and that consumers "need not prove that the prohibited conduct was intentional." *Id.* at 528 (citing *Ellis*, 591 F.3d at 135). The court rejected the defendants' *Stonehart*-reliant argument that they did not know they were misrepresenting the status of the plaintiff's account as "contrary to binding Second Circuit precedent." *Id.* at 529.

The Court notes that BAC's cross-motion also argues that Lichter has put forth no evidence that the debt was owed to New Jersey Urology. Def.'s Brief in Support at 4, 7, 9–10. BAC is correct that there is no evidence that Lichter owes money to New Jersey Urology instead

---

[8] While a plaintiff need not prove a debt collector's intent to prevail on their FDCPA claim, the FDCPA offers an affirmative defense—the bona fide error defense. 15 U.S.C. § 1692k(c). Among its elements, this affirmative defense requires the defendant to prove that "the presumed FDCPA violation was not intentional." *See id.*; *Lee v. Kucker & Bruh, LLP*, 958 F. Supp. 2d 524, 529 (S.D.N.Y. 2013) (quoting *Cerrato v. Solomon & Solomon*, 909 F. Supp. 2d 139, 147 (D. Conn. 2012)). However, BAC has not invoked the bona fide error defense in these cross-motions, and thus the Court will not consider it here.

16

of Bergen Urological. But this question is not material to the resolution of this case. To prevail on summary judgment, Lichter must only show that there was no debt owed to *Bergen Urological*, regardless of whether any debt is or was owed to a different entity. *See Vangorden*, 897 F.3d at 442.[9] For the reasons discussed in this section, Lichter has made this showing.

Thus, on the undisputed facts, Lichter has proven his prima facie case of BAC's FDCPA violation. The parties agree that Lichter is a consumer and that BAC is a debt collector, satisfying the first two elements of Lichter's claim. And the undisputed facts further show that BAC made a false representation as to Lichter's alleged debt when it mailed him a letter seeking to collect a debt on behalf of Bergen Urological, although he owed no debt to that entity.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS Lichter's motion for summary judgment and DENIES BAC's cross-motion for summary judgment. The parties are directed to appear for a status conference on April 16, 2021 at 11:30am. The conference will be held remotely and by telephone; the parties are instructed to dial (877) 411-9748 and dial access code 3029857#. The Clerk of the Court is respectfully directed to terminate the motions, Docs. 16 and 20.

It is SO ORDERED.

Dated:  March 17, 2021
        New York, New York

                                                        _____
                                                        EDGARDO RAMOS, U.S.D.J.

---

[9] BAC argues that *Vangorden* is distinguishable because it involved a debt collector trying to collect a debt on an account that had been settled five years earlier, whereas here, Lichter argues that his alleged debt to Bergen Urological did not exist in the first place. Def.'s Reply Brief at 9–10. This distinction is of no relevance. *Vangorden* does not suggest that it is limited to circumstances in which a debt collector tries to collect a debt that has already been settled. Here, as in *Vangorden*, a debt-collector defendant attempted to collect a debt that the consumer-plaintiff did not owe. In neither case is the defendant's intent of any importance in evaluating how the least sophisticated consumer would understand the defendant's communication.